461 A.2d 1294

**COMMONWEALTH of Pennsylvania**

v.

**Guy BOYD, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 27, 1983.

Filed June 17, 1983.

Appeal Granted and Vacated in Part Dec. 27, 1983.

Lawrence A. Kalikow, Assistant Public Defender, Harrisburg, for appellant.

Katherene Holtzinger, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before WICKERSHAM, CIRILLO and WATKINS, JJ.

CIRILLO, Judge:

A jury convicted Guy Boyd, Jr., of unlawful delivery of a controlled substance (heroin),[1] possession of a controlled substance (preludin),[2] and "possession of a misbranded controlled substance."[3] On April 23, 1981, the Court of Common Pleas of Dauphin County sentenced Boyd to eleven to twenty-three months in the county prison on the delivery charge, and six to twelve months in the county prison on each of the possession charges, all time to be served concur-

[1]. Act of April 14, 1972, P.L. 233, No. 64, § 13; 35 P.S. § 780–113(a)(30).

[2]. *Id.* § 780–113(a)(16).

[3]. *Id.* § 78–113(a)(2).

rently. The court also sentenced Boyd to pay fines and costs on all three charges. This appeal followed.

The charge of delivery of heroin arose from an undercover drug investigation undertaken by the Harrisburg Police Department in March of 1980. The investigation focussed on suspected drug trafficking in the area of Third and Hamilton Streets in Harrisburg. Police employed a civilian, Larry Ferdinandus, to make undercover drug buys in the area. A surveillance team would covertly monitor Ferdinandus and photograph his transactions.

Pursuant to this undercover operation, on April 10, 1980, Detective Sergeant Linden Gates searched Ferdinandus, gave him $110.00 with which to purchase drugs, and dropped him off near the targeted area. At the corner of Third and Hamilton, Ferdinandus spotted appellant, whom he knew simply as "King." Ferdinandus approached "King" and asked in street jargon whether he had any heroin or cocaine for sale. "King" replied that he did, and the two went to a nearby vacant lot, where "King" gave Ferdinandus "a quarter T" of heroin in exchange for $25.00. After "King" had gone, Ferdinandus put the heroin in a glassine packet, which he marked with a "B" to denote heroin, with the name "King," and with the time of the transaction, 2:25 p.m. The surveillance team of officers Richard Schultz and Ronald Davis witnessed and photographed the meeting between Ferdinandus and "King." The officers could not clearly see the actual transaction, but they did recognize appellant from having seen him before in the area. Detective Gates picked up Ferdinandus at about 4:30 p.m., at which time Ferdinandus gave Gates the fruits of the day's activities, including the drugs bought from "King." Based on the sale, police drew up a complaint charging one "King" with unlawful delivery of a controlled substance.

On July 15, 1980, police culminated their investigation by rounding up suspected drug dealers implicated through the undercover operation. Detective Gates and Officer Davis found appellant, whom they still knew only as "King," in

the Wattstax Bar in uptown Harrisburg. They arrested appellant and seized from him an unlabelled plastic bottle containing fifteen pills later determined to be preludin, a controlled substance. Police then drew up an additional complaint charging appellant with possession of a controlled substance and "possession of a misbranded controlled substance." Based on the complaints, the district attorney prepared three informations, upon which appellant was convicted at a consolidated trial.

On appeal, Boyd raises three separate instances of his trial counsel's ineffectiveness.[4] Specifically, Boyd argues that counsel was ineffective (1) for failing to move timely for separate trials on the delivery and possession charges; (2) for failing to request that the jury be instructed that the Commonwealth must prove each and every element of the offenses charged beyond a reasonable doubt; and (3) for failing to raise or preserve the issue of sufficiency of the evidence with respect to appellant's conviction under 35 P.S. § 780–113(a)(2).

In evaluating ineffectiveness of counsel claims, we do not employ hindsight to determine whether other alternatives seem more reasonable than the course of action chosen by counsel. Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the course of action taken by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Ergo, only where counsel's course of action was in no way reasonably designed to further his client's interests, may we find that counsel was ineffective.

**4.** Joshua Lock, a privately-retained attorney, represented Boyd at trial and perfected this appeal. Before the time for submission of appellate briefs, Lock withdrew and Larry A. Kalikow, Assistant Public Defender for Dauphin County, entered his appearance. Since this appeal is the earliest opportunity at which Boyd is represented by new counsel, the ineffectiveness of trial counsel is properly raised before us. *Commonwealth v. Womack*, 307 Pa.Super. 396, 453 A.2d 642 (1982).

■ The Commonwealth charged appellant with "possession of a misbranded controlled substance" under 35 P.S. § 780–113(a)(2), which prohibits, "[t]he adulteration or misbranding of any controlled substance, other drug, device or cosmetic." Possession is not an element of the crime of misbranding a controlled substance. Nevertheless, the Commonwealth prosecuted and obtained convictions on two distinct charges against appellant: "possession of a controlled substance" and "possession of a misbranded controlled substance." The former is made a crime by 35 P.S. § 780–113(a)(16), which prohibits one from "[k]nowingly or intentionally possessing a controlled ... substance by a person not registered under this act...." There is no authority that "possession of a misbranded controlled substance" is a separate crime.

In this case, the only evidence adduced to substantiate either possession charge was testimony that appellant, when arrested, had an unlabelled vial of preludin pills in his pocket. Obviously the possession offenses merge into the single crime of simple possession, unless the fact that the vial was unlabelled alone can support an additional conviction under § 780–113(a)(2). We hold that it cannot. The statute, as a penal law, must be construed according to its plain meaning. The act prohibited by § 780–113(a)(2) clearly is the actual misbranding of a controlled substance. "Misbranding" is defined in detail in 35 P.S. § 780–108. Read in conjunction, the statutes are addressed to preventing the dissemination in commerce of deceptively or dangerously misbranded controlled substances, and not to possession per se. *See, Demarco v. Commonwealth Department of Health,* 40 Pa.Cmwlth. 248, 397 A.2d 61 (1979).

■ We need not address whether appellant was in possession of "misbranded" pills, or under what circumstances mere possession of a controlled substance supports an inference that the possessor did the actual misbranding. It is apparent from the informations and from the prosecution's case at trial that the Commonwealth proceeded all along under the assumption that appellant's possession of mis-

branded preludin, without more, would support a conviction under § 780–113(a)(2). On appeal, the Commonwealth persists in arguing this theory of law. The trial court gave its stamp of approval to this erroneous view of the law when it instructed the jury "that if a person does have in their possession pills or drugs that are mislabelled or not labelled and they should be, then of course that would be a violation of the law." Trial counsel's failure to object at any stage of the proceedings that appellant was tried and convicted for a noncrime clearly constitutes ineffective assistance of counsel. Appellant's conviction under 35 P.S. § 780–113(a)(2) must be reversed, and the judgment of sentence vacated.

Appellant's next claim of ineffectiveness of counsel concerns trial counsel's failure to move timely for separate trials on the possession charges and the delivery charge. Appellant was arraigned on October 2, 1980, and trial on all three charges was scheduled for November 10, 1980. Any pretrial motion to sever the informations for trial, to be timely, should have been made within thirty days after arraignment. Pa.R.Crim.P. 306, 307, 42 Pa.C.S. Appellant's trial counsel did not move for severance until December 15, 1980, the date trial actually began. The court denied the motion as untimely,[5] and all charges were tried together.

At the time of appellant's trial, the propriety of consolidating informations for trial was governed by Pa.R.Crim.P. 228(b):

> Two or more offenses ... may be charged in the same information if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan ....[6]

Although the express terms of the rule address themselves to joinder of charges in one information, our appellate

---

**5.** The court also expressed its opinion that consolidation for trial of the delivery and possession informations was proper.

**6.** The relevant portions of Rule 228 have been replaced by Pa.R. Crim.P. 1127, effective July 1, 1982.

courts have made the rule equally applicable to consolidation of informations for trial. *Commonwealth v. Morris,* 493 Pa. 164, 425 A.2d 715 (1981) (decided under companion rule for indictments, Pa.R.Crim.P. 219); *Commonwealth v. Vickers,* 260 Pa.Super. 469, 394 A.2d 1022 (1978).

The courts have held that consolidation of separate informations for trial is a matter of discretion with the trial judge, and that the exercise of this discretion will be reversed only for manifest abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Morris, supra; Commonwealth v. Vickers, supra.* However, the Superior Court long has measured the trial court's exercise of discretion against a stringent standard; denial of a motion for severance is proper only if (1) the facts and elements of the two crimes are easily separable in the minds of the jurors, and (2) the crimes are such that the fact of commission of each crime would be admissible as evidence in a separate trial for the other. *Commonwealth v. Taylor,* 299 Pa.Super. 113, 445 A.2d 174 (1982); *Commonwealth v. King,* 290 Pa.Super. 563, 434 A.2d 1294 (1981); *Commonwealth v. Vickers, supra; Commonwealth v. Jones,* 242 Pa.Super. 303, 363 A.2d 1281 (1976); *Commonwealth v. Terrell,* 234 Pa.Super. 325, 339 A.2d 112 (1975).

In the case before us, appellant concedes, as he must, that the facts of the crimes consolidated for trial were easily separable in the minds of the jury. The first information charged appellant with delivering a small packet of heroin to Larry Ferdinandus on April 10, 1980. The second information involved a totally discrete set of facts: appellant's possession of fifteen preludin pills when police arrested him in the Wattstax Bar on July 15, 1980. Likewise, the elements of the two crimes charged are dissimilar and easily distinguishable. Under the first information the Commonwealth had to prove intentional delivery of heroin; under the second, intentional possession of preludin. Although both heroin and preludin are controlled substances, there is no danger that the jury might have confused them in the simple context of this case.

■ Appellant argues, however, that evidence of the fact of commission of the delivery offense would be inadmissible in a separate trial for the possession offense, and vice versa, so that a court's refusal to sever the informations would be an abuse of discretion under the "independent admissibility" standard. Generally, evidence of other crimes is independently admissible in a trial for a distinct crime to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) identity, where there is such a logical connection between the crimes that proof of the extraneous crime naturally tends to show that the accused committed the crime he is charged with. *Commonwealth v. Morris, supra;* McCormick on Evidence, § 190 (2d Ed. 1972). The fact of commission of an extrajudicial crime is not otherwise admissible because of the danger that the jury will find guilt on the basis that the defendant is a bad man rather than on evidence of the crime charged. *See, Commonwealth v. Taylor, supra.* The danger of prejudice also occurs when the defendant is tried at one trial for several offenses. This prejudice may be of three types: (1) the defendant may be embarrassed or confounded in presenting defenses, as where his defense to one charge is inconsistent with his defenses to others; (2) the jury may use evidence of the additional crimes to infer criminal disposition, and find guilt on the basis of this inference; or (3) the jury may cumulate evidence of the various crimes to find guilt, when it would not so find had it considered the evidence of each offense separately. Accordingly, the interest of judicial economy served by consolidating informations must be weighed against these possibilities of prejudice in determining the propriety of consolidation. *Commonwealth v. Morris, supra; Commonwealth v. Rose,* 265 Pa.Super. 159, 401 A.2d 1148 (1979).

■ Applying these guidelines, we agree with appellant that proof of his possession of preludin at the time of his arrest would have been inadmissible and prejudicial at a

separate trial on the heroin delivery charge, and that the charges should have been severed for trial. The possibility that the jury might have used the evidence of preludin possession to infer criminal disposition, or that they might have cumulated the evidence to find a general inclination on appellant's part to involve himself with drugs, is apparent. Appellant's defenses to the separate charges were entirely consistent with each other, and so the danger of prejudice of type (1) was minimal. But a review of the Commonwealth's case and appellant's defense on the delivery charge convinces us that none of the "other crimes" exceptions would have allowed the Commonwealth to introduce evidence of appellant's preludin possession at a separate trial on that charge. Appellant's entire defense to the charge was designed to prove that the Commonwealth had arrested the wrong man. He testified that he had been visiting Greenville, North Carolina, during Easter and for the week following, which included the 10th of April, 1980. Two witnesses corroborated appellant's alibi; one, a lieutenant in the Greenville police department, testified to having issued appellant a traffic warning citation on the morning of April 10. Appellant also claimed that he had never seen Larry Ferdinandus before. Appellant presented further evidence to show that the police had mistaken him for someone else. Two witnesses testified that officers Gates and Davis had exhibited hesitancy in identifying appellant in the Wattstax Bar on the night of the arrest, and the Clerk of Courts was called to testify that one Kenneth Patterson, a/k/a "King," had been charged with drug offenses in 1972. It is clear that appellant's motive, intent, or absence of mistake or accident were not in issue on the heroin delivery charge. Nor did appellant's possession of preludin tend to show a "common scheme, plan, or design embracing commission of two or more crimes *so related to each other that proof of one tends to prove the other." See, Commonwealth v. Taylor, supra; Commonwealth v. Vickers, supra; Commonwealth v. Fiorini*, 257 Pa.Super. 185, 390 A.2d 774 (1978); *Commonwealth v. Jones, supra.* Indeed, the only contested issue on the heroin delivery charge was the

identity of the perpetrator. But any "logical connection" between appellant's possession of fifteen preludin pills on the date of his arrest and an isolated heroin transaction three months earlier is far too tenuous to meet the test of independent admissibility to prove identity. The only factor common to both crimes is that each involves a controlled substance. Our Supreme Court has adopted Professor McCormick's suggestion that evidence of other crimes may come in under the identity exception only when it is distinctive and unusual enough to show a common modus operandi:

> The Commonwealth must show more than the other crimes are of the same class as the one for which the defendant is being tried. Rather, there must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others.

*Commonwealth v. Morris,* 493 Pa. at 176, 425 A.2d at 721. *See also, Commonwealth v. Fortune,* 464 Pa. 367, 373, 346 A.2d 783, 786 (1971).

Appellant had a right to severance of the possession and delivery charges, and trial counsel's untimely motion to sever reflected his judgment that separate trials would advance his client's interests. Under the circumstances, there can be no reasonable basis for counsel's actions, and his assistance to appellant must be deemed constitutionally infirm. *Commonwealth v. Smith,* 495 Pa. 362, 433 A.2d 1349 (1981); *Commonwealth v. Von Smith,* 486 Pa. 564, 406 A.2d 1034 (1979).

Had trial counsel timely moved for severance, it would have been an abuse of discretion for the trial court to deny the motion. However, this is not to say that both of appellant's convictions must now be reversed. A new trial must be granted on the charge of delivery of heroin, because the possibility that the evidence of preludin possession unfairly influenced the jury's verdict outweighs any permissible justification for the evidence. But we are convinced that evidence relating to the heroin transaction

*would* have been independently admissible to prove motive, intent, and absence of mistake or accident at a separate trial for possession of preludin, and that this evidence did not deprive appellant of a fair trial on the possession charge.

At trial, appellant did not deny that police found a vial of preludin pills in his pocket when they arrested him. Appellant produced a friend, Princ Henby, to testify that he had visited appellant in Harrisburg recently, and that he had left the vial of pills in appellant's car. Henby testified that the pills had been prescribed for him for weight loss, and he identified a defense exhibit as a prescription label which he had removed from a bottle of preludin purchased at a pharmacy in North Carolina. Appellant corroborated Henby's testimony, and testified further that he had been carrying the vial of preludin in his pocket intending to mail it to Henby when police made the arrest. The only contested issue on the possession charge, therefore, was whether appellant had the guilty knowledge necessary to convict him of possession of a controlled substance. To rebut appellant's claim that he possessed the drugs innocently, the Commonwealth elicited Detective Gates's testimony that overweight people often obtain preludin prescriptions, then sell the drug to street dealers who resell it illegally. Gates testified that this type of trafficking constitutes by far the most common use of the drug preludin. Had the Commonwealth been limited to presenting this evidence as rebuttal in a separate trial for preludin possession, its case would have been hampered severely. We believe that evidence that appellant earlier had dealt heroin to Larry Ferdinandus would have been admissible at a separate trial to prove appellant's guilty knowledge and intent in possessing the preludin, and to rebut his contention that it was mere accident that he happened to be carrying the preludin when police arrested him. *See, United States v. Mehrmanesh,* 689 F.2d 822 (9th Cir.1982); *United States v. Rocha,* 553 F.2d 615 (9th Cir.1977); *United States v. Castro-Castro,* 464 F.2d 336 (9th Cir.1972), *cert. denied,* 410 U.S. 916, 93

S.Ct. 971, 35 L.Ed.2d 278 (1973); McCormick on Evidence, *supra.* In this instance, we find that the probative worth of the evidence of appellant's prior drug dealing outweighs any tendency the jury might have had to cumulate the crimes or convict on the basis of "criminal disposition." *See, Commonwealth v. Morris, supra.*

■ Appellant's final contention is that trial counsel rendered ineffective assistance in failing to request an instruction that the Commonwealth must prove each and every element of the offenses charged beyond a reasonable doubt. The court did instruct the jury that the defendant was presumed to be innocent, and that the Commonwealth, to overcome the presumption, was obliged to prove his guilt beyond a reasonable doubt. The court also described, diligently and in detail, the elements of the various offenses and the meaning of "reasonable doubt." In *Commonwealth v. Bishop*, 472 Pa. 485, 372 A.2d 794 (1977), the Supreme Court held that the trial court had erred in refusing, despite a specific defense request, to instruct the jury that the Commonwealth had the burden of proving *every essential element* of the crime of first-degree murder beyond a reasonable doubt. In *Commonwealth v. Shoats*, 297 Pa.Super. 236, 443 A.2d 814 (1982), a three-judge panel of this Court, with Judge Wickersham dissenting, held that trial counsel's failure to request an "every essential element" instruction in accordance with *Bishop*, constituted ineffectiveness of counsel per se. However, we do not find the holding in *Shoats* applicable to the facts of this case. In *Shoats* the defendant was convicted of escape, robbery, kidnapping, and assault. The charges arose from a crime spree during which the defendant first joined with fellow inmates in taking over a cell block in a state prison, next escaped from the prison, and finally, while at large, abducted a prison guard and his family from their home and held them hostage. Given the complex set of facts in the *Shoats* case, and the complicated elements of the various crimes, the defendant might have derived some benefit from an "each and every element" instruction. In the instant case, as appellee's brief points out, the facts and elements bear-

ing on the charge of possession of a controlled substance are simple and to a certain degree self-explanatory.[7] Possession and mens rea are the only elements of the crime; the fact of possession was not in dispute, and the court went to considerable lengths to instruct the jury that they had to find intentional criminal conduct in order to convict. *Cf. Commonwealth v. Gay,* 489 Pa. 17, 413 A.2d 675 (1980). The court complied with the cardinal rule of jury instruction, under which the only issue is whether the law is adequately, accurately, and clearly presented for the jury's consideration. *Commonwealth v. McComb,* 462 Pa. 504, 341 A.2d 496 (1975). Therefore, trial counsel had a reasonable basis for not objecting to the instruction. *Commonwealth ex rel. Washington v. Maroney, supra.*

For the reasons given in this opinion, we order the following: at No. 1151 C.D.1980, delivery of a controlled substance, that the judgment of sentence be reversed and the case remanded for a new trial; at No. 1152 C.D.1980, possession of a controlled substance, that the judgment of sentence be affirmed; at No. 1152(a) C.D.1980, possession of a misbranded controlled substance, that the judgment of sentence be reversed and the information quashed.

---

**7.** Since we reverse appellant's convictions on the other two charges, there is no point in discussing the propriety of the instructions relating to those charges.